[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On January 16, 2001, pursuant to Connecticut General Statutes 46b-129
(b),[1] the Commissioner of the Department of Children and Families filed a petition alleging that Shardinay K. and Azyre H. were both in immediate physical danger from their surroundings. The Department further alleged that as a result of these conditions, the children's safety was endangered and immediate removal from such surroundings was necessary. Based upon these allegations, the Department secured an ex parte order of temporary custody. CT Page 2301
The court scheduled a preliminary review of the order for January 26 2001 Tocarra F. the mother of both children, and Sean H. father of Azyre, both appeared. Through counsel they requested an immediate evidentiary hearing.
At the conclusion of the hearing, this court ordered the children returned to their mother. The basis for that decision follows.
A. Factual Determinations
Tocarra F. is an eighteen-year-old who gave birth to her first child, Shardinay, on July 18, 1998. Due to allegations of physical abuse, Shardinay was committed to the Department from March 1999 to March 2000. Thereafter, the child was under the Department's protective supervision. On January 4, 2001, while protective supervision still existed, Tocarra's second child. Azyre, was born.
According to the testimony introduced at the evidentiary hearing, during the fail of 2000, Tocarra's living arrangements were strained. At the time she resided with her paternal grandmother, Mrs. O. and her brothers, Derek and Eric O. Mrs O. was a licensed foster parent for both Derek and Eric. Unfortunately, Tocarra and her brother Eric had an altercation that resulted in Tocarra's arrest.
Pursuant to their authority to investigate foster homes, the Department visited the paternal grandmother's home on January 11, 2001. Prior to that visit, the newborn Azyre had been hospitalized for a viral infection. While at the O. house, a Department investigator determined that the home was also the residence for Tocarra's father, John O. The Department had received reports from Derek and Eric that John was a drug abuser. When confronted at the home. John insisted that he was not a permanent resident. He refused to take any drug tests. Based upon the fact John was a resident in the apartment, the Department took immediate custody of both Shardinay and Azyre.
Prior to the evidentiary hearing, Tocarra changed residences. She now lives in the home of a cousin of the Respondent Father Sean H.
Criminal records checks indicated that although arrested, Tocarra F. has no criminal convictions. Her father John has a criminal record, but his convictions were primarily misdemeanors involving various forms of larceny. He does not have a criminal record for either drug use or drug sale. Sean H. has neither an arrest nor a conviction record.
B. Legal Analysis
CT Page 2302
An ex parte order of temporary custody is an extraordinary procedure. To remove a child from his or her natural parents, the Department must establish that the child is in imminent danger of physical harm and that the removal of the children is necessary to avert this harm. Connecticut General Statues 46b-129 (b). See also Wallis v. Spencer, 202 F.3d 1126,1138 (9th Cir. 2000). "Even where the parent-child relationship is marginal, it is usually in the best interests of the child to remain at home and still benefit from a family environment." Pamela B. v. Ment,244 Conn. 296, 339, 709 A.2d 1089 (1998) (citations and quotations omitted). As the Pamela B. Court cautioned,
 We have made it clear that this fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. Pamela B. v. Ment, 244 Conn. at 340 (citations and quotations omitted).
This court recognizes that the Department may be required to take anticipatory measures to insure the safety of children. However in the present case, the critical factor in the removal of these children was their grandfather's presence in the family household. This fact was known to the Department as early in 1999 and is documented in various reports filed by the Department in support of Shardinay's initial commitment. Additionally, reports filed in support of protective supervision again indicate that John was a part of Shardinay's household. Despite knowledge that John might have resided in the home, the Department never sought a court order prohibiting the children's mother from residing with her father. It is difficult to understand how a fact known to the Department for over a year suddenly transformed into an exigent circumstance that warranted immediate removal of these children.
Additionally, the court must note that the mother, Tocarra, has voluntarily left her grandmother's household and thus has eliminated the basis for the initial ex parte removal. "A state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." C.A. Brokaw v. MercerCounty, United States Court of Appeals, Docket Number 98-1131 (7th Cir. December 19, 2000). Here that evidence is significantly lacking. CT Page 2303
The state has failed to justify the need for the continued intrusion in this family's integrity. As a result, the order of temporary custody must be vacated.
Julia DiCocco Dewey, Judge